UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jeffrey Siegel, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HSBC Holdings, plc, *et al.*, <br><br> Defendants. | Case No. 15-cv-10139 <br><br> Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

On November 9, 2005, terrorists affiliated with *al-Qaeda in Iraq* ("AQI")[1] perpetuated coordinated bombings of three hotels in Amman, Jordan. Certain victims of that cowardly attack and their representatives[2] now allege that Defendants HSBC Holdings, plc ("HSBC-Holdings"), HSBC Bank USA, N.A. ("HSBC-U.S."), HSBC Bank Middle East Limited ("HSBC-Middle East"), HSBC North America Holdings, Inc. ("HSBC-North America"), and Al Rajhi Bank facilitated AQI's access to American financial markets, thereby aiding and abetting

---

[1] AQI, also known as the Islamic State of Iraq and the Levant, was officially designated as a Foreign Terrorist Organization by the United States in December 2004. U.S. DEP'T OF STATE, DESIGNATED FOREIGN TERRORIST ORGANIZATIONS, https://www.state.gov/j/ct/rls/other/des/123085.htm (last visited August 9, 2017).

[2] Plaintiffs Michael Butler and Sooha Akkad are nationals of the United States who survived the November 2005 attack. [59] at 5-6. Plaintiffs Jeffrey Siegel, Tarek Akkad, Malek Akkad, Zade Akkad, Susan Gitelson, Ziad Monla, Tarek Monla, and Moustapha Monla are either heirs to, or the personal representatives of, certain deceased victims of the November 2005 attack. All of these individuals are from California or Massachusetts, except for Susan Gitelson. Since these parties stand on equal footing for the purposes of the present motions, the Court will refer to them collectively as "Plaintiffs" in this Memorandum Opinion and Order.

AQI's terrorist activity in violation of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(d).

Currently pending before the Court are a Motion to Dismiss or To Transfer filed by Al Rajhi Bank [64] and a Motion to Strike, Dismiss and Transfer filed by the HSBC entities [67]. Both motions are fully briefed, and the Court heard oral argument on July 26, 2017.

For the reasons explained below, Al Rajhi Bank's motion is granted, and the collective HSBC motion is granted in part and denied in part, all without prejudice.

## I. Background

### A. Al Rajhi Bank

Al Rajhi Bank is incorporated under the laws of the Kingdom of Saudi Arabia and maintains its principal place of business there. [59] at 9. It functionally has no presence in the United States, according to the unrebutted affidavit submitted by its Chief Operations Officer. [52-1] at 1-3. It is not registered or licensed to do business here, and it does not have any employees, branch offices, subsidiaries or agencies here. *Id.*

Plaintiffs claim that Al Rajhi Bank entered into a "scheme" whereby it "established, maintained and administered a highly organized program to make financial payments to terrorist groups al-Qaeda and AQI possible." [59] at 27. Plaintiffs also generally allege the each Defendant, including Al Rajhi Bank, "committed numerous acts in furtherance of this scheme," and took "affirmative steps to conceal" these transactions from American regulators. *Id.* at 19-20.

2

Plaintiff's Amended Complaint also incorporates a report from 2010 entitled "U.S. Vulnerabilities to Money Laundering, Drugs, and Terrorist Financing," authored by the United States Senate Permanent Subcommittee on Investigations ("the Report"). *Id.* at 17. The Report reflects, *inter alia*, that while banks "rarely carry explicit links to terrorist financing," Al Rajhi Bank exhibits a number of troubling "factors," including "the naming of a key bank official in a list of al Qaeda financial benefactors, a U.S. law enforcement search of Al Rajhi nonprofit and business ventures in the United States to disrupt terrorist financing, a CIA report targeting the bank for being a 'conduit' for extremist finance, the bank's refusal to produce authenticating bank documents for use in the criminal trial of a client who cashed travelers cheques at the bank for use by terrorists, and multiple accounts held by suspect clients." *Id.* at 18-19.

Al Rajhi Bank is seeking to dismiss the claims against it for want of personal jurisdiction, or, in the alternative, to transfer this action to the Southern District of New York. *See generally* [64].

### B. The HSBC Defendants

The Amended Complaint frequently makes wholesale reference to the "HSBC Defendants." These collective allegations purport that, *inter alia*, the HSBC Defendants were "offering a gateway for terrorists to gain access to U.S. dollars and the U.S. financial system," "opening U.S. correspondent accounts for high risk affiliates without conducting due diligence," and "providing U.S. correspondent services to banks with links to terrorism," including Al Rajhi Bank. [59] at 7-8.

3

### 1. HSBC-North America

Defendant HSBC-North America is a Delaware corporation with its principal place of business in New York City. [68-4] at 2. It principally serves as a holding company for its subsidiaries. *Id.*

The only allegation in the Amended Complaint specific to HSBC-North America states that its "officials, committee members, compliance officers, and Anti-Money Laundering ('AML') directors are involved with, and oversee, the compliance and AML operations at [HSBC-U.S.]." [59] at 7.

HSBC-North America is seeking to strike the claims against it pursuant to Federal Rule of Civil Procedure 12(f) or, in the alternative, to transfer this action to the Southern District of New York. *See generally* [67].

### 2. HSBC-Holdings

Defendant HSBC-Holdings is a holding company organized under the laws of the United Kingdom, with its principal place of business in London. [68-1] at 2. It is, by its own admission, the "ultimate parent company of the other HSBC Defendants," [68] at 4, and it has no operations or employees in the United States. [68-1] at 2.

The Amended Complaint contends that HSBC-Holdings "used tactics to circumvent" regulatory procedures that identify and halt transactions involving prohibited persons and countries. [59] at 22. These "tactics" include "stripping information from wire transfer documentation to conceal the participation of a prohibited country or person, or characterizing a transaction as a transfer between

4

banks in an approved jurisdiction, while omitting payment details that would disclose participation of a prohibited originator or beneficiary." *Id.*

HSBC-Holdings is seeking to have the claims against it dismissed for lack of personal jurisdiction. *See generally* [67].

### 3. HSBC-Middle East

Defendant HSBC-Middle East is a bank incorporated and headquartered in Dubai, with no U.S. operations or employees. [68-2] at 2. It does not offer the "correspondent" banking services that are central to Plaintiffs' allegations.[3] [68-3] at 2.

HSBC-Middle East is also seeking to have the claims against it dismissed for want of personal jurisdiction. *See generally* [67].

### 4. HSBC-U.S.

Finally, Defendant HSBC-U.S. is a national banking association with its principal place of business in McLean, Virginia and its principal executive offices in New York, New York. [68-3] at 2. It also maintains an office in Mettawa, Illinois. [59] at 7.

HSBC-U.S. offers commercial and consumer banking products, including the international correspondent banking services central to Plaintiffs' allegations. [68-3] at 2-3. HSBC-U.S.'s correspondent banking business is centered in New York. *Id.* at 3. HSBC-U.S. does not have any bank branches in this judicial district, and, according to an unrebutted affidavit submitted by Matthew F. Living, Head of the

---

[3] Correspondent banking is, essentially, the facilitation of international transactions for foreign banks, including payments and fund transfers.

Correspondent Banking and Business Management Financial Institutions Group at HSBC-U.S., no employees or documents involved in correspondent banking services are in this judicial district.

HSBC-U.S. has not moved to dismiss, but rather seeks to transfer, the claims against it to the Southern District of New York. *See generally* [67].

**II. Analysis**

**A. Motions to Dismiss Claims Against Al Rajhi Bank, HSBC-Holdings, and HSBC-Middle East**

Al Rajhi Bank, HSBC-Holdings, and HSBC-Middle East each seek to dismiss the claims against them pursuant to Rule 12(b)(2), which permits a court to dismiss claims for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2); *Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 918 (N.D. Ill. 2008). To successfully oppose a Rule 12(b)(2) motion, Plaintiffs bear the burden of demonstrating that the Court has personal jurisdiction over the moving defendant. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1045 (N.D. Ill 2015). In making this determination, the Court may receive and weigh affidavits from both parties. *Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983). The Court draws every reasonable inference and resolves all factual disputes in favor of Plaintiffs. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). Unrefuted facts in a defendant's affidavits, however, will be taken as true. *Id.*

### 1. Principles of Personal Jurisdiction

"Personal jurisdiction" refers to the Court's "power over the parties." *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013). It involves the Court's "power to bring a person into its adjudicative process." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (internal quotation omitted). While that power "derives ultimately from the state (in the general sense of the term), the party's contacts with the state, and the reasonableness of the assertion of judicial authority," the "mechanics for asserting personal jurisdiction in federal court are found in Federal Rule of Civil Procedure 4(k)." *KM Enters.*, 725 F.3d at 723.

Indeed, "Plaintiffs and all moving Defendants acknowledge that Federal Rule of Civil Procedure 4(k)(2) governs this jurisdictional analysis." [70] at 7. Rule 4(k)(2) provides that where defendants are not subject to the jurisdiction of any state's court system and the plaintiffs' claims arise under federal law, any federal district court may, as a matter of procedure, properly exercise jurisdiction over the defendants.

Of course, the Court's exercise of jurisdiction in a Rule 4(k)(2) case must still comport with the Constitution's due process requirements. *See Torrent Pharm. Ltd. v. Daiichi Sankyo, Inc.*, 196 F. Supp. 3d 871, 879 (N.D. Ill. 2016). The "Due Process Clause permits courts to exercise either general ('all-purpose') jurisdiction or specific ('conduct-linked') jurisdiction." *Id.* Only the latter is implicated here,

however, as Plaintiffs confirmed at the July 26 hearing that they do not contend that this Court has general personal jurisdiction over any Defendant.

The "specific personal jurisdiction analysis focuses on the relationship among the defendant, the forum . . . and the conduct at issue in the litigation." *Id.* In determining whether the exercise of specific jurisdiction is constitutionally proper in this case, the Court considers whether: (1) the particular defendant at issue had sufficient minimum contacts with the country as a whole; and (2) "the suit arises out of or relates to such contacts." *Id.*

Under controlling Seventh Circuit precedent, this "relatedness" inquiry is principally concerned with the tacit *quid pro quo* at the heart of the social contract: "out-of-state residents may avail themselves of the benefits and protections of doing business in a forum state, but they do so in exchange for submitting to jurisdiction in that state for claims arising from or relating to those activities." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 430 (7th Cir. 2010) ("The precise causal relationship between contacts and claim was not important; what was required was that the relationship be intimate enough to keep the *quid pro quo* proportional and personal jurisdiction reasonably foreseeable.") (internal quotation omitted).

### 2. Lack of Specific Personal Jurisdiction

Plaintiffs have failed to satisfy either prong of the specific personal jurisdiction inquiry with respect to Al Rajhi Bank, HSBC-Holdings, and HSBC-Middle East.

None of these entities had sufficient minimum contacts with the United States as a whole to justify the exercise of this Court's jurisdiction. The unrebutted affidavits supplied by all three defendants conclusively establish that: (1) they do not conduct business in the United States; and (2) their activities are not directed at this country. *See supra* at 2-6. The conclusions and observations in the Report (published five years after the November 2005 attacks), are certainly troubling, but they remain irrelevant to the requisite jurisdictional inquiry here. *See GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009) (To "be relevant for personal jurisdiction, past contacts should either bear on the substantive legal dispute between the parties or relate to the operative facts of the case.").

Even assuming *arguendo* that these Defendants had sufficient minimum contacts with the United States to satisfy the first prong, Plaintiff still fails to carry his burden because none of the allegations "arise out of" the putative contacts. As to HSBC-Holdings and HSBC-Middle East, Plaintiffs do not allege that they had any involvement with the November 2005 bombing that is the basis of their claim. Nor do Plaintiffs allege that these specific Defendants had dealings with AQI or Al Rajhi Bank. In short, Plaintiffs have not adequately alleged that their claims against HSBC-Holdings and HSBC-Middle East "*directly arise* out of [their] specific contacts" with the United States, and thus, this Court is not empowered to exercise jurisdiction over them *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (emphasis in original); *see also Leibovitch v. Islamic Republic of Iran*,

188 F. Supp. 3d 734, 751 (N.D. Ill. 2016), *aff'd*, 852 F.3d 687 (7th Cir. 2017) (There "is virtually no link between the in-state banking activities of these French and Japanese banks and Plaintiffs' claims arising from a terrorist attack that occurred in Israel with the support of the Iranian government. It certainly cannot be said that Plaintiffs' claims directly arise out of the banking activities of these local branches.").

Jurisdictionally, Plaintiffs' claims against Al Rajhi Bank are similarly deficient. The only allegation in the Amended Complaint regarding U.S.-directed conduct by Al Rajhi Bank concerns a "scheme" between the "HSBC Defendants" and Al Rajhi Bank to make it "possible" for Al Rajhi Bank to transfer U.S. dollars through the United States in a way that "circumvent[ed] monitoring by U.S. regulators." [59] at 27-29. Without more, this allegation, taken as true for the purposes of the present motions, is simply insufficient to justify the exercise of specific personal jurisdiction in this case, which concerns harms occasioned by the November 2005 attack. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 676 (2d Cir. 2013) (Plaintiffs' "central allegation against the Liechtenstein defendants is that they provided financial services to clients that purportedly were associated with al Qaeda, and thereby aided al Qaeda. These allegations are not enough for personal jurisdiction purposes.") (internal citation and quotation omitted); *see also Digisound-WIE, Inc. v. Bestar Techs., Inc.*, No. 07-cv-6535, 2008 WL 2095605, at *4 (N.D. Ill. May 16, 2008) (granting motion to dismiss because "naked allegations that [the defendant] committed or conspired to commit an

10

intentional tort . . . without more, is not sufficient to establish a prima face case of personal jurisdiction").

Quite simply, Plaintiffs have not connected these Defendants to the November 2005 attack that is the crux of this lawsuit. Moreover, their claims do not "arise from" these Defendants' (extremely tenuous) connections to the United States, and the claims are accordingly dismissed for want of personal jurisdiction.

### B. Motion to Strike Claims Against HSBC-North America

Defendants have also moved, pursuant to Federal Rule of Civil Procedure 12(f), to strike both: (1) the claims against HSBC-North America; and (2) any claims brought by Susan Gitelson, who was appointed as a "Special Administrator" of the estate of Rima Akkad Monla pursuant to the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/0.01. These requests are denied without prejudice, for the reasons explained below.

#### 1. Principles Governing Motions to Strike

Rule 12(f) provides that the Court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike "are generally disfavored because they potentially only delay the proceedings." *Edwards v. Mack Trucks, Inc.*, 310 F.R.D. 382, 386 (N.D. Ill. 2015). The moving party has the burden of showing that the challenged allegations "are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003) (internal quotations omitted). A motion to strike is proper, however, when

11

it serves to remove "unnecessary clutter" and thus expedites a case. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

A motion to strike should be granted only if the language in the pleading: (1) "bears no possible relation to the controversy"; or (2) "may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). The former "is essentially a relevancy inquiry." *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1007 (N.D. Ill. 2013). Regarding the latter, sufficient prejudice results "when the matter complained of has the effect of confusing the issues, or where it is so lengthy and complex that it places an undue burden on the responding party." *Sun Life Assurance Co. of Canada v. Great Lakes Business Credit LLC*, 968 F. Supp. 2d 898, 903 (N.D. Ill. 2013).

### 2. Defendants' Arguments Regarding Their Motion to Strike

HSBC-North America insists that the claims against it should be stricken because it "does not even offer correspondent banking services to non-U.S. clients like Al Rajhi Bank," and its "primary business" is to "act as a holding company." [68] at 13. Defendants also note that the only allegation in the Amended Complaint specific to HSBC-North America states that its "officials, committee members, compliance officers, and Anti-Money Laundering ('AML') directors are involved with, and oversee, the compliance and AML operations at [HSBC-US]," which is an inadequate basis for liability. [68] at 7-8. In short, HSBC-North America argues that the claims against it should be stricken because it "has nothing to do with the allegations in the Amended Complaint." *Id.* at 8.

12

Defendants also suggest that all claims brought by Susan Gitelson, as the "Special Administrator" of the estate of Rima Akkad Monla, should be dismissed for want of statutory standing. Gitelson was appointed as a "Special Administrator" pursuant to the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/0.01, and "the powers and duties of a special administrator are strictly limited to those prescribed by the wrongful death statute," such that a Special Administrator's "authority to prosecute a cause of action is limited to the wrongful death claim." *Brooks v. McLean Cty. Unit Dist. No. 5*, 8 N.E.3d 1203, 1208 (Ill. App. Ct. 4th Dist. 2014) (internal quotation omitted).

### 3. Defendants' Requests Are Procedurally Flawed

Both of Defendants' arguments are improper under Rule 12(f). HSBC-North America is essentially challenging the sufficiency of the allegations against it, which must be done pursuant to Rule 12(b)(6), not Rule 12(f). *See Ehlerding v. Am. Mattress & Upholstery, Inc.*, 208 F. Supp. 3d 944, 953 (N.D. Ind. 2016) ("Rule 12(f) is not the proper vehicle to attack the sufficiency of Plaintiff's claims, which is essentially what Defendants are attempting to do."); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 ("Rule 12(f) . . . as the cases make clear, is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint, or a counterclaim, or to strike an opponent's affidavits.").

The arguments regarding Gitelson's lack of statutory standing should also have been brought pursuant to Rule 12(b)(6). *See In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 951 (N.D. Ill. 2016) ("Questions of statutory standing are reviewed

13

under Rule 12(b)(6) . . . ."); *D.G. ex rel. Tang v. William W. Siegel & Assocs., Attorneys at Law, LLC*, 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) (Multiple courts "have specifically explained that a motion for lack of prudential or statutory standing is evaluated under Rule 12(b)(6).").

The Court will not permit Defendants to "backdoor" Rule 12(b)(6) arguments through Rule 12(f). Such an allowance would "creat[e] redundancies within the Federal Rules of Civil Procedure," and subject the Court's decision to "a different standard of review than if [it] had adjudicated the same substantive action under Rule 12(b)(6)." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010). Such an attack is particularly unfair in this case, as the parties expressly agreed to defer briefing on Rule 12(b)(6) issues until jurisdictional questions were settled. [32] at 1-4.

This portion of Defendants' motion is accordingly denied without prejudice. At this point, the Court is expressing no opinion regarding the ultimate viability of either the claims brought against HSBC-North America or the claims brought by Susan Gitelson. The Court is merely insisting that any challenges to those claims be brought pursuant to the appropriate Federal Rule (and in accordance with the approved briefing agreement of the parties).

### C. Motion to Transfer Claims

Finally, Defendants seek to transfer "what remains of the action" to the Southern District of New York. [68] at 29. Defendants' request is made pursuant to 28 U.S.C. § 1404(a), which provides that "for the convenience of parties and

14

witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision to transfer venue under Section 1404(a) requires a weighing of multiple factors. This balancing "necessarily involves a large degree of subtlety and latitude," and is therefore committed to the sound discretion of the Court. *Nagle v. The Hartford Life & Accident Ins. Co.*, No. 15-cv-6072, 2015 WL 9268420, at *2 (N.D. Ill. Dec. 21, 2014) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)).

1. **Factors To Consider**

Several factors must be met for an action to be transferred to another venue: (1) venue must be proper in this district; (2) venue and jurisdiction must be proper in the transferee district; (3) the transferee district must be more convenient for both the parties and witnesses; and (4) transfer must serve the interest of justice. *See Delta Air Lines, Inc. v. Perfekt Mktg., Inc.*, 861 F. Supp. 2d 919, 920 (N.D. Ill. 2012). The first two factors are not disputed.[4]

---

[4] Venue is proper both here and in the Southern District of New York pursuant to 18 U.S.C. § 2334 ("Any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent."). Defendants, by virtue of their transfer request, have also waived any personal jurisdiction objections. *See 21 srl v. Newegg Inc.*, No. 09-CV-6590, 2010 WL 1178066, at *3 (N.D. Ill. Mar. 24, 2010) (Defendant "waived any arguments regarding personal jurisdiction when it brought a motion to transfer under 28 U.S.C. § 1404(a)."). Plaintiffs, in their opposition to the motion to transfer, did not raise any jurisdictional concerns, and with good reason. *See Bull v. Ill. Union Ins. Co.*, No. 16 C 11446, 2017 WL 3234374, at *3 (N.D. Ill. July 31, 2017) ("The relevant question under § 1404(a), however, is whether the plaintiff could have brought suit in the transferee forum, for which personal jurisdiction over the plaintiff is not a prerequisite. To that end, courts in this district have found personal jurisdiction over the plaintiff irrelevant to a § 1404(a) transfer analysis.") (internal citation omitted).

## 2. Convenience of the Parties Favors Transfer

The relative convenience of the venues, however, is hotly contested. To resolve this dispute, the Court must consider four factors: (1) Plaintiffs' choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience of the parties and witnesses. *See Fed. Trade Comm'n v. Big Dog Sols. LLC*, No. 16-CV-6607, 2016 WL 5391391, at *2 (N.D. Ill. Sept. 27, 2016). On balance, these factors weigh in favor of transfer.

While Plaintiffs obviously chose this forum, their selection is given less deference "where, as here, the chosen forum lacks any significant connection to the cause of action." *Sanders v. Franklin*, 25 F. Supp. 2d 855, 858 (N.D. Ill. 1998). The only Defendant with connections to this judicial district does not offer the type of international correspondent banking services at issue here. The only Plaintiff from Illinois is Susan Gitelson, who seemingly does not reside in this district and may not even be a party to this action after briefing pursuant to Rule 12(b)(6). The Court accordingly gives Plaintiffs' selection less deference than it would normally carry.

The situs of material events is in the Southern District of New York, where HSBC-U.S.'s correspondent banking business is centered. Unsurprisingly, sources of proof can also be found more easily in the Southern District of New York, since "New York is the headquarters of defendant's [relevant] U.S. operations, [and] those employees of defendant most familiar with the company's U.S. operations work in

New York." *Virgin Air, Inc. v. Virgin Atl. Airways, Inc.*, No. 91-cv-8118, 1992 WL 73522, at *2 (N.D. Ill. Mar. 30, 1992).

Finally, the convenience of the parties and witnesses is well-served by a transfer. As discussed *supra*, the vast majority of the Plaintiffs are residents of either California or Massachusetts, while the HSBC entity that provides the correspondent banking services at issue here is located in the Southern District of New York.

While Plaintiffs initially attempted to establish that this judicial district is more convenient than the Southern District of New York (because Chicago represents a "convenient geographic midpoint" for parties dispersed on the East and West coasts), they later conceded in court that commercial airlines regularly fly convenient routes into both Chicago and New York City. [70] at 18. Clearly, the dispositive factor here is the location of HSBC-U.S.'s correspondent banking services, which renders the Southern District of New York more convenient.

### 3. The Interests of Justice Favor Transfer

Finally, the Court must consider whether the interests of justice favor a transfer, in an effort to: (1) ensure the efficient administration of justice; (2) have the trial before a judge who is familiar with the applicable law; and (3) honor the relative desire of communities to adjudicate matters that affect them directly. *Big Dog Sols. LLC*, 2016 WL 5391391, at *4.

As a preliminary matter, common sense "suggests that the litigation will move more quickly in a venue close to key witnesses and evidence, and where such

17

witnesses are within the court's subpoena power." *Andrade v. Chase Home Fin., LLC*, No. 04-cv-8229, 2005 WL 3436400, at *9 (N.D. Ill. Dec. 12, 2005). Similarly, the Southern District of New York has a stronger interest in adjudicating the present dispute, which turns on correspondent banking services offered in New York City. Transfer is also consistent with the efficient administration of justice, as Al Rajhi Bank is currently embroiled in multi-district litigation in the Southern District of New York, involving allegations similar to those presented here. *See In re Terrorist Attacks on Sept. 11, 2001*, Case No. 1:03-md-1570 (S.D.N.Y.). Indeed, Plaintiffs might be able to re-plead their claims against Al Rajhi Bank in this lawsuit with the requisite jurisdictional grounding, and if they do, it makes good sense for this case to be litigated in the Southern District of New York.

The Seventh Circuit's recent decision in *Leibovitch v. Islamic Republic of Iran*, 852 F.3d 687 (7th Cir. 2017), is illustrative here. In that case, the court denied a motion to compel where personal jurisdiction was lacking over the target foreign banks. *Id.* at 681. Judge Posner concluded his opinion with the following observation:

> We're puzzled that none of the plaintiffs who brought the suit against Iran that resulted in the default judgment are residents of Illinois. Why they are suing here rather than in the districts in which they live or work is unexplained. What is worse than merely unexplained is that they've presented no evidence to suggest that the two Chicago branch banks are either holding Iranian government assets or have any knowledge of where those assets might be held. In short, what are they doing here?

*Id.* at 690.

18

This Court is similarly puzzled as to why Plaintiffs initiated this case in this district. The banking services at issue were provided in New York, and the Plaintiffs largely hail from Massachusetts or California. Clearly, this case does not belong here.

### III. Conclusion

As noted above, Al Rajhi Bank's Motion to Dismiss or To Transfer [64] is granted without prejudice. The Motion to Strike, Dismiss and Transfer filed by the HSBC entities [67] is denied in part and granted in part. Plaintiffs' claims against HSBC Holdings, plc and HSBC Bank Middle East Limited are dismissed without prejudice for want of personal jurisdiction. The remainder of this action, consisting of Plaintiffs' claims against HSBC North America Holdings, Inc. and HSBC Bank USA, N.A., is transferred to the United States District Court for the Southern District of New York.

Date: August 14, 2017

ENTERED:

_____
John Robert Blakey
United States District Judge